UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LARRY E. WATKINS                                                                PLAINTIFF

v.                                                                CIVIL ACTION NO. 3:04-CV-564-S

WILLIAM GLASS                                                                DEFENDANT

## MEMORANDUM OPINION

This matters comes before the court upon the motion of the defendant, William Glass ("Glass"), for summary judgment. A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153-61, S. Ct. 1598, 1606-10, 16 L.Ed.2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592-93, 20 L.Ed.2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

**BACKGROUND**

The plaintiff, Larry E. Watkins ("Watkins"), is a parolee currently on parole under the supervision of the Kentucky Department of Corrections, Division of Probation and Parole. Watkins had received a life sentence resulting from convictions for Assault in the First Degree, Possession of a Handgun by a Convicted Felon, Persistent Felony Offender in the First Degree, and Escape in the Second Degree. He was paroled by the Kentucky Parole Board in 1997, 2002, and 2006; however, the occasion relevant to this action was in 2002.

On October 2, 2002, Watkins was discharged from prison on parole. He was placed under the supervision of Kentucky Probation and Parole Officer William Glass, the defendant. After having been on parole less than three months, Watkins admitted to Glass and Parole Officer Dorothy Howard that he had violated his conditions of supervision by using alcohol on December 25 and 26, 2002. Watkins next violated his conditions of supervision by reporting to the parole office on February 28, 2003, after having used alcohol. He tested positive for the use of alcohol and admitted to the use in writing. Yet, in exchange for Watkins admitting this violation, Glass agreed to request a continuance of the preliminary revocation hearing, *sine die*, with leave to redocket the hearing.

Watkins signed a written agreement requesting the continuance, *sine die*, of the preliminary revocation hearing. The request for continuance imposed two conditions on Watkins' continuance: (1) he would complete the Dismas program and enter any treatment deemed necessary; and (2) he would incur no additional violations of parole. There is no dispute that Watkins met the first condition, completion of the Dismas program. However, Watkins admits that he failed the second condition by again violating his parole on or about July 3, 2003, when he tested positive for cocaine. Watkins signed an Admissions/Sanction Form that warned Watkins that his positive drug test and admission of cocaine use could result in revocation of his continuance, among other sanctions.

Nevertheless, Watkins implies in his Complaint that after testing positive in July, he and Glass reached a Second Chance agreement where he would again enter into a drug treatment

- 2 -

program. While Glass admits that at some point such an agreement was reached, he counters that Watkins began the admission process for the Second Chance program in June, long before the positive July drug test. At his preliminary revocation hearing on August 5, 2003, Watkins admitted that he was screened for the Second Chance program in June but tested positive in July before he started actual classes for the program.

Because on the start date of classes Watkins' positive drug test was still pending verification, he was not then charged with a new violation and permitted to begin the Second Chance program. Furthermore, Glass told Watkins that he would look into some other treatment for him, such as an in-patient drug treatment program in lieu of revocation. However, before any further action was taken on the positive test, Watkins was arrested for other felony and misdemeanor charges that allegedly involved domestic violence and alcohol use.

This arrest prompted Glass to begin the parole revocation process for Watkins. Glass did not charge Watkins based upon the new arrest, but, viewing the new arrest as an aggravating factor and indication that Watkins would continue violating his conditions of supervision, Glass charged him with the pending alcohol use charges, which were properly subject to be redocketed due to Watkins' failure to comply with the continuance agreement,  and with the use of cocaine, a charge that had not been previously brought or continued.

A Notice of Preliminary Hearing was served on Watkins on July 18, 2003, providing him with notice that he was being charged with violating his conditions of supervision by: (1) use of alcohol, 2 counts, continued, *sine die*, on March 24, 2003, and (2) use of the controlled substance cocaine, having tested positive on July 3, 2003 and admitted using the same. Watkins appeared with counsel at his preliminary revocation hearing, where the administrative law judge found probable cause and returned Watkins to the Parole Board for a final hearing, at which his parole was revoked.

Watkins subsequently filed an action in Franklin Circuit Court against the Kentucky Parole Board seeking to be released from prison. Glass was not a party to this case. Franklin Circuit Court

released Watkins. Watkins has now brought suit against Glass, arguing that Glass violated his due process rights by starting the parole revocation process and getting his parole revoked in 2003. Glass asserts that no such violation occurred and moves for summary judgment. For the reasons stated herein, we will grant Glass' motion.

## ANALYSIS

### I. Res Judicata

We first address the decision by the Franklin Circuit Court to release Watkins. Watkins points to this decision as evidence of Glass having violated his due process rights. The Franklin Circuit Court found that after Watkins tested positive for cocaine in July 2003, Glass "agreed if Watkins entered into the [second chance] substance abuse treatment program and reported the cocaine violation to his counselor he would not face parole revocation." It is unclear whether the Franklin Circuit Court had the same record before it as we do when it made this finding. Glass contends that it did not – that the Parole Board's attorney failed to provide the court the necessary evidence to demonstrate that Watkins' claims were false. However, whether the Franklin Circuit Court had before it the same record is immaterial, given that the doctrine of *res judicata* does not operate against Glass.

The doctrine of *res judicata* holds that a "final judgment rendered on the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of competent jurisdiction." *Yeoman v. Commonwealth of Ky.*, 983 S.W.2d 459, 464 (Ky. 1998). However, Glass was neither a party to the first action nor is he in privity with the Kentucky Parole Board, who was a party to the first action. While one could argue that as an agent of the Kentucky Parole Board, Glass' interests were adequately represented by the Board in the first action, the rule of differing capacities provides that "'[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules

of res judicata in a subsequent action in which he appears in another capacity.'" *Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003) (quoting Restatement (Second) of Judgments § 36(2) (1982)). Here, Glass is being sued in his individual, and not his official, capacity. Thus, *res judicata* does not operate against him.

## II. Due Process Violation

Our review of the record reveals that the evidence establishes beyond any reasonable dispute that Glass did not violate Watkins' due process rights when Glass began the process to revoke Watkins' parole in July 2003. Glass began this process based upon his "reason to believe" that Watkins had violated his conditions of supervision and where, in the case of the continued revocation proceeding, Glass merely requested the redocketing of charges from when Watkins first failed to comply with the terms of the continuance agreement.

Under Kentucky law, "[a]ny parole officer having reason to believe that a parolee has violated the terms of his release may arrest the parolee without a warrant." Ky. Rev. Stat. § 439.430. However, in making such an arrest the officer must "submit in writing a report showing in what manner there has been a violation of the conditions of release." *Id.* There is no dispute that Glass had reason to believe that Watkins, upon testing positive for cocaine use and admitting to the same, had violated his conditions of supervision, as well as the conditions of his continued revocation proceeding. There is also no dispute that Glass provided him notice of these charges and scheduled a prompt revocation hearing.

The only issue is Watkins' claim that his parole should not have been revoked because of the alleged agreement he had with Glass to continue him on parole in spite of his violations in exchange for his participation in the Second Chance program. However, the record and Watkins' own admission reveal that Watkins was scheduled to begin this program before he tested positive for cocaine. Thus, this agreement could not be the product of Watkins' admitted cocaine use. And, while Glass admits that after Watkins tested positive he told Watkins that he would look into some

other treatment for him, "looking into treatment" does not amount to having made an agreement to continue Glass on parole in exchange for his participation in yet another treatment program.

Meanwhile, the only Response Watkins makes regarding the record are his own legal conclusions. In his Response Watkins contends that Glass "has submitted to this Court false information." Yet, Watkins does no go on to support this conclusion, instead remarking that he "will not waste this Court's time nor his own" by addressing facts already within the record. However, the record demonstrates that Watkins suffered no due process violation. As such, Glass is entitled to summary judgment.

A separate order in accordance with this opinion will be entered this date.